IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VICENTE TORRES, | ) |
| | ) |
| Petitioner, | ) |
| | ) Hon. George W. Lindberg |
| v. | ) Case Number 09 C 85 |
| | ) |
| TERRY McCANN, Warden, | ) |
| Stateville Correctional Center, | ) |
| | ) |
| Respondent. | ) |

MEMORANDUM OPINION AND ORDER

Before the court is Vicente[1] Torres' ("Torres" or "petitioner") petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Torres is an inmate at Stateville Correctional Center in Joliet, Illinois. For the reasons set forth below, the petition is denied.

*I. Procedural History*

On May 11, 2004, Torres entered a blind plea of guilty to two counts of first degree murder for the murder of his longtime girlfriend, Maria Rivera ("Ms. Rivera"). On November 15, 2004, the trial judge in Will County, Illinois, sentenced Torres to forty-five years imprisonment. Four months after his sentence was imposed, Torres filed a *pro se* petition under the Illinois Post-Conviction Hearing Act ("Act") 725 ILCS 5/122-1 *et seq*. The trial court denied the petition as frivolous and patently without merit. Torres appealed that dismissal, and a divided appellate court reversed and remanded the cause for further proceedings. The state filed

---

[1] The record is inconsistent on the correct spelling of petitioner's first same. The docket sheet and all the filings submitted to this Court indicate that petitioner's first name is "Vincente." However, the transcript of the June 9, 2005 hearing before Judge Daniel Rozak indicates that petitioner spells his name "Vicente." Vicente is also the spelling the Illinois Supreme Court used in its 2008 judgment and option and is the spelling this Court will adopt. *See People v. Torres*, 228 Ill.2d 382 (2008).

a petition for leave to appeal to the Illinois Supreme Court, which was granted. On April 17, 2008, the Illinois Supreme Court issued a judgment and opinion, reversing the appellate court and affirming the judgment of the trial court that Torres' post-conviction petition was frivolous and patently without merit. *See People v. Torres*, 228 Ill.2d 382, 320 Ill.Dec. 874, 888 (2008).

On January 7, 2009, Torres, via appointed appellate counsel, filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The sole issue in the habeas petition is whether Torres' trial counsel rendered ineffective assistance of counsel when he failed to consult with Torres about filing a direct appeal of the forty-five year sentence.

## II. Relevant Facts

The state court's summary of the relevant facts are presumed correct absent "clear and convincing" evidence to the contrary. *Williams v. Bartow*, 481 F.3d 492, 498 (7th Cir. 2007)(citing 28 U.S.C. § 2254(e)(1)). There is no objection to the state court's factual summary, therefore this Court adopts that summary. On August 9, 2003, Torres went to the Bolingbrook residence of his longtime girlfriend, Ms. Rivera, with the intent to kill her. Eight days prior, Rivera told Torres she was dating someone else and did not want to get back together with him. Torres and Ms. Rivera had dated for more than thirty years and had children together.

On August 9, 2003, Torres brought a gun to Rivera's residence, which he purchased the day before. Torres wrapped the gun in a pair of pants and carried it into the residence. He went downstairs to a room in the basement where Ms. Rivera was sleeping. Torres made some noise and woke Ms. Rivera. She asked Torres to quiet down because she was sleeping and Torres responded, "Fine, you can go to sleep forever." Torres had difficulty pulling the slide of the gun back, which allowed Ms. Rivera to briefly run up some stairs. As Ms. Rivera reached the top of

the stairs, Torres fired the gun at her and killed her. An autopsy revealed that the bullet struck Ms. Rivera in the left temple and exited through her right eye.

After the shooting, Torres fled the residence in his vehicle. Witnesses followed Torres' vehicle and were able to provide police with his location. Police gave chase for several miles and eventually apprehended Torres on Interstate 55. The police searched Torres' vehicle and found a nine-millimeter handgun on the floorboard. The gun was in a "discharge slide back position with a magazine engaged" and forensic testing showed that the gun matched the spent cartridge recovered from the murder scene. Witnesses identified Torres as the individual they followed from the murder scene.

On April 30, 2004, Torres indicated to the trial court that he wanted to enter a blind plea of guilty to both counts of first degree murder. In response to the trial court's questioning, Torres answered that he was pleading guilty to both counts and he understood the nature of the charges against him and that he had a right to plead not guilty. Torres also agreed to the factual basis the state outlined for the guilty plea. The trial court explained to Torres that the charges carried "a mandatory minimum prison sentence . . . of 20 years, and that can go as high as 60 years." The trial court repeated "So the range is," when Torres interrupted the court and stated "they've already told me that." The trial court indicated that he wanted to make sure Torres understood the sentencing range and continued "so it's a minimum of 20 years in prison and a maximum of 60 years in prison." The trial court also explained that Torres would have to serve one hundred percent of his sentence and would not be eligible for early release. Torres agreed that he had fully discussed his decision to plead guilty with his counsel, that his counsel had explained the consequences of a guilty plea, and that he was satisfied with the services his counsel provided.

Then, Torres indicated that he was only pleading guilty because his attorneys told him that he had no defenses. The trial court stressed to Torres that no one could make him plead guilty and that the decision on how to plead was his alone. The trial court offered to set a trial date, if Torres wanted to go to trial. After that exchange, Torres indicated three more times that he wanted to plead guilty, but the trial court insisted on postponing the plea hearing so defendant could consult with his counsel and consider his options.

Eleven days later, on May 11, 2004, the trial court conducted a second change of plea hearing. At that hearing, the trial court again admonished Torres about his rights and Torres indicated that he wanted to enter a blind plea of guilty. The trial court explained to Torres that if it accepted the guilty plea, the court could sentence him to a minimum of twenty years and a maximum of sixty years in prison and that Torres would have to serve that entire sentence, with no possibility of probation or good-time credit. The trial court inquired as to whether Torres had any questions about the possible sentence and Torres said "no." At the October 29, 2004 sentencing hearing, the trial court heard witness testimony and argument from both sides. Members of the victim's family and the state requested the maximum sentence provided by law and defense counsel requested a sentence "closer to the minimum." The trial court took the arguments and sentencing recommendations under advisement.

On November 15, 2004, the trial court sentenced Torres to forty-five years imprisonment. Prior to imposing the sentence, the trial court noted that, given Torres' age, "pretty much any sentence [it] impose[s] is a life sentence." The trial court also noted that Torres' case was "probably one of the most premeditated first-degree murders [it had] come across" in twenty-eight years. After imposing the sentence, the trial court advised Torres about his appellate rights

and the procedural requirements for filing an appeal.

Torres did not file a timely direct appeal. Instead, Torres pursued post-conviction relief, which was ultimately denied by the Illinois Supreme Court in April 2008. Thereafter, Torres filed the instant petition raising a single issue – whether Torres' trial counsel rendered ineffective assistance of counsel when he failed to consult with Torres about filing a direct appeal of the forty-five year sentence.

## III. Legal Analysis

"Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a petitioner is entitled to habeas relief when a decision of the state court is 'contrary to' or 'an unreasonable application of' clearly established federal law as determined by the United States Supreme Court." *Burr v. Pollard*, 546 F.3d 828, 831 (7th Cir. 2008) (quoting 28 U.S.C. § 2254(d)(1)). "A decision is 'contrary to' Supreme Court precedent when it relies on a rule that conflicts with that precedent or reaches a different result in a similar case." *Burr*, 546 F.3d at 831. "A state court unreasonably applies clearly established law if it 'identified the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case.'" *Burr*, 546 F.3d at 831 (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000)). Error alone is not sufficient. *Burr*, 546 F.3d at 831. The state court's decision must be "objectively unreasonable." *Id*.

In order to present a viable claim for federal habeas review, Torres must establish that he (1) exhausted all applicable state court remedies and (2) his claims are not procedurally defaulted. *See* 28 U.S.C. § 2254(b). Respondent concedes that petitioner has exhausted all available state court remedies and that his claim has not been procedurally defaulted. Therefore,

5

the Court will address Torres' single claim on the merits.

In order to prevail on this claim, Torres bears a heavy burden and must show that the Illinois Supreme Court's decision was objectively unreasonable and that his counsel's representation fell below "an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). Torres must also show "that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id*. at 694.

The issue before the court is whether Torres' trial counsel provided him with constitutionally infirm representation because he did not consult with Torres about filing an appeal. The Illinois Supreme Court correctly found that Torres forfeited an independent claim regarding an improper admonishment at his change of plea hearing by not raising that claim in his original postconviction petition. This Court will not consider the improper admonishment issue as an independent claim, but rather will address that issue in the context of Torres' ineffective assistance of counsel claim.

In considering the ineffective assistance of counsel claim, the Illinois Supreme Court correctly identified *Strickland* and *Flores-Ortega* as the cases that provide the governing legal standards. The Illinois Supreme Court noted that the United States Supreme Court rejected a bright-line rule that counsel must always consult with a defendant regarding an appeal. *See Roe v. Flores-Ortega*, 528 U.S. 470, 480, 120 S. Ct. 1029, 1036, 145 L. Ed. 2d 985, 997 (2000). Instead there is a two-prong inquiry to determine whether trial counsel's failure to consult with Torres about an appeal constituted deficient performance. *Flores-Ortega*, 528 U.S. at 478. The Illinois Supreme Court correctly noted that it was undisputed that trial counsel failed to consult

6

with Torres about an appeal.

Therefore, trial counsel only owed Torres a duty to consult about an appeal if there was reason to think (1) "that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal)," or (2) "that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Flores-Ortega*, 528 U.S. at 480. The Illinois Supreme Court found that Torres did not have any non-frivolous grounds for an appeal and did not reasonably demonstrate to counsel that he was interested in appealing. *Torres*, 888 N.E.2d at 104. The Illinois Supreme Court further found that Torres could not demonstrate that trial counsel's performance was deficient under *Strickland* and did not reach the issue of prejudice. The Illinois Supreme Court's holding was not an unreasonable application of *Strickland*, or *Flores-Ortega*.

Turning to the second prong in the *Flores-Ortega* test first, Torres concedes that he did not reasonably demonstrate to his trial counsel that he was interested in appealing. Therefore, Torres can only prevail on his petition if the Illinois Supreme Court's finding as to the first prong of the test was an unreasonable application of federal law.

The evidence in the record supports the Illinois Supreme Court's finding that Torres did not present any non-frivolous grounds for appeal in his postconviction petition. The issue Torres focused on before this Court and the Illinois Supreme Court related to the trial court's admonishments regarding the statutory minimum sentence available in Torres' case. Torres plead guilty in a blind plea, which meant Torres and the state did not reach an agreement regarding what sentencing recommendations they would make to the trial court. At the time of the plea and sentencing, all parties believed the available sentencing range for Torres' crime was

7

twenty to sixty years imprisonment. The trial court and Torres' trial counsel repeatedly informed Torres about that possible sentencing range and the trial court applied that range in determining Torres' ultimate forty-five-year prison sentence. The trial court indicated that he chose the forty-five-year sentence because it took into account both the mitigating factor - Torres' lack of a criminal record - and the aggravating factor - the premeditated nature of the murder - in this case.

After the sentencing, Torres learned that the actual statutory minimum available in his case was forty-five years imprisonment, not twenty years. The correct statutory maximum penalty was eighty-five years imprisonment, not sixty years. *See* 730 ILCS 5/5-8-1 (a)(1)(d)(iii) (West 2004). A twenty-five-year mandatory enhancement applied to Torres' case because during the murder, he personally discharged a firearm that caused the death of another person - Ms. Rivera. *Id*. The enhancement added twenty-five years to both ends of the twenty to sixty year range discussed during Torres' change of plea hearings and sentencing hearings.

However, the record is clear that the trial court did not apply or consider the twenty-five-year enhancement in imposing Torres' sentence. Instead, the trial court chose a sentence in the middle of the twenty to sixty year range – forty-five years imprisonment – because of the mitigating and aggravating factors discussed above. If the trial court had correctly identified the sentencing range as forty-five to eighty-five years imprisonment, it may have imposed a sentence closer to sixty-five or seventy years imprisonment after considering the mitigating and aggravating factors.

Torres argues that his trial counsel had an absolute duty to consult with him about an appeal because the incorrect admonishment regarding the applicable statutory minimum and maximum penalties created a nonfrivolous ground for appeal. In support of that argument Torres

cites to numerous federal cases. *See Boykin v. Alabama*, 395 U.S. 238 (1969)(review of a lower court's ruling on a direct criminal appeal); *McCarthy v. United States*, 394 U.S. 459 (1969)(review of a lower court's ruling on a direct criminal appeal); *United States v. Fernandez*, 205 F.3d 1020 (7th Cir. 2000)(direct criminal appeal); *United States v. Watch*, 7 F.3d 422 (5th Cir. 1993)(direct criminal appeal); *United States v. Hourihan*, 936 F.2d 508 (11th Cir. 1991)(direct criminal appeal); *United States v. Davis*, 428 F.3d 802 (9th Cir. 2005)(direct criminal appeal); *United States v. Goins*, 51 F.3d 400 (4th Cir. 1995)(direct criminal appeal). All the cases petitioner cites involved direct criminal appeals, not habeas cases and thus are not directly on point.

Further, those cases are factually distinguishable from the instant case. In this case, Torres was sentenced exactly as the trial court's admonishment advised him he would be. The trial court admonished Torres that we would receive a sentence between twenty and sixty years imprisonment and he was sentenced to forty-five years. To the contrary, in *Goins* the trial court admonished the defendant that the applicable sentencing range was thirty-three to forty-one months imprisonment and then sentenced him to sixty months imprisonment. *Goins*, 51 F.3d 400. In *Hourihan*, the plea agreement indicated an applicable guideline range of thirty-three to forty-one months imprisonment and did not mention the sixty month mandatory minimum sentence. *Hourihan*, 936 F.2d 508. In *Davis*, defense counsel told the defendant he would receive probation if he plead guilty, but he was sentenced to eight years imprisonment. *Davis*, 428 F.3d 802. In *Watch*, the government and defendant entered into a plea agreement in a failed attempt to avoid the ten year statutory minimum. *Watch*, 7 F.3d 422. In *Fernandez*, the defendant's attorney represented to the trial court and the defendant that the applicable

9

sentencing range could be as low as seventy to 108 months and the trial court did not tell defendant about the 120 month statutory minimum. *Fernandez*, 205 F.3d at 1030. The trial court sentenced that defendant to 235 months. *Id.* at 1022. Not a single one of the cases Torres cites involved a habeas petition, or included a fact pattern in which the defendant was sentenced precisely in accordance with the trial court's admonishments about the sentencing ranges.

The Illinois Supreme Court properly took into account the information Torres' counsel knew or should have known when determining whether a rational defendant would have wanted to appeal the forty-five-year sentence. *Flores-Ortega*, 528 U.S. at 480. First, Torres plead guilty and indicated to his counsel and the court that he wanted to save his family "the aggravation of a trial" and that he had no defense to the charges. That factor weighs against wanting to appeal. *Id.* Torres received the sentence he bargained for, which also weighs against an appeal. *Id.*

As stated above, in entering a blind plea, Torres and the state did not agree on a sentence to recommend to the trial judge. Instead, they agreed on a sentencing range of twenty to sixty years and both sides would recommend that the trial court sentence Torres to a prison term within the range. The state and the victim's family wanted sixty years, Torres, through is counsel, requested closer to twenty years and the trial judge chose forty-five years. The Illinois Supreme Court found that because Torres got the sentence that he bargained for and could have received a much higher sentence, there are no grounds in the record that would have given trial counsel reason to this that a rational defendant would have wanted to appeal the forty-five year sentence. Therefore, the performance of Torres' trial counsel was not deficient under *Strickland*. Those findings do not constitute an unreasonable application of federal law.

*IV. Conclusion*

For the reasons set forth more fully above, Torres' petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied.

**ORDERED**: The petition for writ of habeas corpus [1] is denied. This is a final and appealable order. It is so ordered.

E N T E R:

George W. Lindberg
SENIOR U.S. DISTRICT JUDGE

DATED: May 20, 2009